```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
DONNA DAVIS,                                                :
                                                            :    **MEMORANDUM**
                                      Plaintiff,            :    **DECISION AND ORDER**
                                                            :
              - against -                                   :    18-cv-1694 (BMC)
                                                            :
                                                            :
NANCY A. BERRYHILL, Acting                                  :
Commissioner of the Social Security                         :
Administration,                                             :
                                      Defendant.            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

1.  Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not disabled as defined in the Social Security Act and its regulations for the purpose of receiving disability insurance benefits and supplemental security income. The ALJ found that plaintiff has severe impairments of macular degeneration, hypertension and obesity, but that she could perform "light work" that required only occasional visual acuity.

2.  Plaintiff's first point of error is that the ALJ failed to recognize that she has a severe impairment of peripheral neuropathy – tingling and numbness in her feet – and that his failure to recognize this impairment threw off his analysis of her residual functional capacity. Plaintiff's contention is that since light work requires the ability to stand and walk, a severe impairment of peripheral neuropathy, if found by the ALJ, might well preclude a residual functional capacity finding that plaintiff can do light work.

3.      There is "more than a mere scintilla" of evidence, see <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), to support the ALJ's conclusion that any peripheral neuropathy is not severe; indeed, there are indications that she doesn't have it at all.  Principal among this evidence was the report of consultative examiner Dr. Ammaji Manyam, an internist, dated June 30, 2014.  Plaintiff said to him, or at least he understood her to say, that she had only had pain once in her left leg and it went away, and that the pain and numbness in her feet was not bilateral (as is typical with peripheral neuropathy).  This, plus (1) plaintiff's statements to Dr. Manyam that she enjoyed going to the park and was able to take care of her children; and (2) plaintiff's full motor strength in her upper and lower extremities, caused Dr. Manyam to conclude that although plaintiff had a "[h]istory of peripheral neuropathy," it was "very inconsistent because she only had pain once," and that the lack of bilateral pain and numbness "is also inconsistent history for peripheral neuropathy."

4.      In addition to Dr. Manyam's report, the Commissioner has cited me to treatment notes suggesting that plaintiff had intact sensations and normal reflexes, good capillary refill in both feet, normal or close to normal pulses, full muscle strength in her legs, and an intact gait.  However, other than the circulation strength findings as to her legs, there are contrary findings, and more of them, to each of the others.

5.      Of course, "more than a mere scintilla" of evidence cannot mean a feather's weight more than a mere scintilla, for if it did, then the evidence in favor of the administrative decision would not rise to the level of "substantial."  Rather, as the case law makes clear, to set aside the finding, this Court would have to find that the ALJ's decision was unreasonable, i.e. "a reasonable mind" would not have found the evidence "adequate to support [the] conclusion."  See <u>id</u>.  "Unreasonable", in turn, must mean something worse than simply wrong, for if it did

not, then this Court would be conducting a *de novo* review of the record, which is not the standard. See Schaal v. Apfel, 134 F.3d 496 (2d Cir. 1998).

6. Having reviewed this record, I am compelled to conclude that the ALJ's finding that any peripheral neuropathy that plaintiff may have had was not severe was an unreasonable finding. The standard for severity is not onerous – an impairment having anything more than a "minimal effect" on plaintiff's ability to stand or walk would have to be considered severe. See 20 C.F.R. §§ 404.1522, 416.922; SSR 85-28. Applying that standard here, the quality of the evidence suggesting non-severity was poor, while the evidence suggesting severity was compelling. Indeed, because of the modest threshold for a severe impairment, I have seen many administrative decisions finding a severe impairment on a lot less evidence than is present here. The problems with the evidence relied upon by the ALJ and the Commissioner are as follows.

7. First, plaintiff's alleged statements as recorded by Dr. Manyam that plaintiff only had pain once in her left leg and that her numbness and tingling were not bilateral – statements which formed the entire basis of his conclusion that plaintiff doesn't have peripheral neuropathy – do not make any sense in light of plaintiff's other medical history. It was only four months earlier, on March 3, 2014, that plaintiff went to the emergency room at New York Presbyterian with complaints of bilateral foot pain and numbness from her toes to her ankles for more than a week, telling the ER resident that her feet were so painful that "she cannot walk." The timing of this ER visit was fully consistent with her testimony before the ALJ that her foot pain began a short time after the onset of her visual problem.

8. How, then, could she have told Dr. Manyam four months later that the only lower extremity impairment she ever had was pain on one occasion in her left leg? Either Dr. Manyam misunderstood her, or he asked her a very narrow question (or she understood him to be asking a

3

very narrow question) about leg pain, and he assumed, although she did not, that she was including foot pain when she mentioned the one occasion of left leg pain. In any event, it seems clear that something got lost in the conversation between Dr. Manyam and plaintiff.

9. The Commissioner points out that even in this March 3, 2014 emergency room record, there is circumstantial evidence of a lack of peripheral neuropathy, i.e., her feet were normal in color with normal capillary refill and only a slightly diminished pulse. But that circumstantial evidence is not dispositive, and is countered by the Emergency Room specialist's "Review of Systems" in which, under the "Musculoskeletal" category, she noted "pain on movement of b/l [bilateral] feet," and under the "Neuro Symptoms" category, "numbness to feet." She also found that plaintiff's feet had "tenderness to palpation," and made a diagnosis of "neuropathic pain." She prescribed Gabapentin, a standard treatment for neuropathy. And regardless of plaintiff's blood flow and foot color, this ER report cannot be reconciled with Dr. Manyam's understanding of her history.

10. The other evidence cited by the ALJ in support of his conclusion that plaintiff did not have a "severe" impairment of peripheral neuropathy is similarly weak. He discounted a February 25, 2016 consultative report by internist Dr. John Fkiaras, who noted "swelling of bilateral ankles and bilateral feet present," because none of the other reports observed swollen feet or ankles. First of all, as discussed below, this was an incorrect reading of the record. But even if plaintiff had an onset of peripheral neuropathy in early 2014, I would see nothing surprising if the swelling did not show or showed only intermittently for a couple of years.

11. It would be an unlikely error that Dr. Fkiaras would note bilateral swelling if there was none, and nothing but peripheral neuropathy has been offered to explain the bilateral swelling. Dr. Fkiaras also noted "decreased sensation to light touch in bilateral feet," a

"moderately unsteady" gait, an inability to walk on toes, and an ability to walk on heels only "with difficulty," all of which is fully consistent with peripheral neuropathy. He found her "unable to participate in activities which require prolonged standing … [or] walking." In addition, his report also tends to confirm the likely inaccuracy of Dr. Manyam's report, since plaintiff gave a history of her foot problems to Dr. Fkiaras in 2016 which was consistent with her visit to the emergency room at New York Presbyterian in 2014 and totally inconsistent with Dr. Manyam's history reporting of a single instance of leg pain.

12. But that is not all. There is much other evidence consistent with peripheral neuropathy. Two days after her March 3, 2014 emergency room visit, plaintiff had an appointment with Weill Cornell internist Dr. Lee Shearer. She rated plaintiff as having "2/2 numbness" in her feet. She also found "reduced mono-filament BL [bilateral] to ankle," a finding that is consistent with although not determinative of bilateral neuropathy. She further found that plaintiff had difficulty distinguishing hot from cold in her feet, which is also consistent with peripheral neuropathy.

13. The record continues to build in favor of peripheral neuropathy after plaintiff's evaluation by Dr. Shearer. She saw another Weill Cornell doctor, a neurologist named Dr. Peter Zhao Yan, a few weeks later (March 24, 2014), with arguably worse foot complaints. Contrary to the ALJ's determination that the only mention of swelling in the record is from Dr. Fkiaras in 2016, Dr. Yan noted that plaintiff "[a]lso endorses foot swelling b/l [bilaterally] which is new since [her March 3, 2014] discharge" and he himself wrote, as part of his physical examination results, "B/l foot edema [swelling] noted". He also noted that her "gait [was] mostly narrow based, could not tandem."

14. Plaintiff had a number of appointments following this one in the ensuing months in which she made the same complaints. A neurologist at Weill Cornell who examined her a couple of days after Dr. Yan wrote that the "[e]xamination is notable for decreased pin pick in the toes, impaired proprioception [nerve reporting] but Negative Romberg [a balance test] … ." These kinds of reports continued every six months or so, but they became worse, as plaintiff reported several incidents of falling because she couldn't feel her feet.

15. I also agree with plaintiff's argument that the ALJ placed unreasonable weight on the fact that plaintiff's peripheral neuropathy was "of unknown etiology." As plaintiff correctly urges, this does not mean that there is no peripheral neuropathy. There are many potential causes of peripheral neuropathy and there is nothing sufficiently unusual about a medical inability to definitively determine the particular cause that it undermines the diagnosis. The ALJ did not find that plaintiff was making up her symptoms out of whole cloth and, indeed, any such finding would be flatly inconsistent with the record, which contains many objective indicia of numbness, swelling, and diminished sensation. Even if the cause of this impairment turned out to be psychosomatic, which no one has suggested, it is still there, not within plaintiff's conscious control.

16. In sum, the notations in the record so vastly outweigh the notations of only slightly diminished pulses and good circulation in her feet both in terms of quantity and probative value that I must consider the ALJ's finding that she has no "severe" impairment of peripheral neuropathy to be unreasonable. Relying on Dr. Manyam's opinion does not change that because, as noted above, there was clearly some misunderstanding of her history.

17. The Commissioner argues that even if the ALJ committed error in determining that any peripheral neuropathy was not severe, it is harmless error because it would not change

plaintiff's residual functional capacity. That argument is unpersuasive because this Court is in no position to make that *de novo* determination. As set forth above, there is abundant evidence of numbness, swelling, decreased sensitivity and falling as a result of peripheral neuropathy. Does that leave plaintiff still able to perform light work, which requires standing and walking? I cannot address that question, as this Court's function is to review the ALJ's determination of that issue, which has not been made. I certainly cannot conclude that any error is harmless.

18. My conclusion on this issue at least informs if it does not determinate the resolution of plaintiff's remaining points of error. Plaintiff's residual functional capacity needs to be reevaluated in light of her severe impairment of peripheral myopathy. The ALJ, of course, must give appropriate weight to her treating physicians in making that determination. My decision here also means that the ALJ will have to reconsider the Listings of Impairments, with specific reference to plaintiff's peripheral neuropathy and the combination of her visual and foot impairments.

19. The case is therefore remanded to the Commissioner for a re-evaluation by the ALJ consistent with this decision. Plaintiff's motion for judgment on the pleadings is granted and the Commissioner's motion for judgment on the pleadings is denied. Judgment will enter accordingly.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
February 23, 2019